THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ISAAC BLOOM, Appellant.

1. EVIDENCE — COMPETENCY OF WITNESS — STATUTE FORBIDDING PHYSICIANS TO DISCLOSE PROFESSIONAL INFORMATION — PARTY ENTITLED TO PROTECTION MAY WAIVE IT — EFFECT OF WAIVER NOT LIMITED BY THE STATUTE. The protection afforded to a party to an action or proceeding by the statute (Code Civ. Pro. § 834), forbidding a physician " to disclose any information which he acquired in attending" the party as a patient and "which was necessary to enable him to act in that capacity," is a personal privilege and may be waived. The waiver " must be made in open court," or " the attorneys for the respective parties may, prior to the trial, stipulate for such waiver," (Code Civ. Pro. § 836.) But neither in the statute nor in the statutes which it superseded, has the legislature limited the effect of a waiver when once made, and its omission to do so indicates its intention to leave the effect of such waiver open to construction by the courts.

2. SAME — WAIVER OF PRIVILEGE — EFFECT THEREOF, CANNOT BE LIMITED TO PARTICULAR PURPOSE OR TRIAL. When a waiver has once been made, in the manner prescribed by statute, it is general and not special, lasting and not temporary, and it is not limited to a particular purpose, person or trial. Whether the waiver is by the affirmative action of the patient in calling forth the privileged testimony, or by his negative action in not preventing the other party from calling it forth, the logical effect is to deprive the statute of all further power of protection, because there is nothing left to protect against. The statute no longer applies when the information that it would have kept secret, if the patient had so elected, has been made known in a judicial proceeding with his consent.

1

3. SAME — FAILURE OF PARTY, ON CIVIL TRIAL, TO OBJECT TO PRO-
HIBITED TESTIMONY OF PHYSICIANS, PRECLUDES HIM FROM OBJECT-
ING TO SAME EVIDENCE IN SUBSEQUENT CRIMINAL TRIAL. Where,
upon the trial of an action for personal injuries, physicians, who had
treated the plaintiff before the alleged injury, were sworn for the
defendant and testified as to facts learned in attending plaintiff in their
professional capacity, which tended to show that his physical condition
was not the result of the alleged injury, to which testimony the plaintiff
did not object, but, through his counsel, cross-examined the physicians
upon their direct evidence, he cannot, on the trial of an indictment
charging him with perjury, committed on the trial of the first action, suc-
cessfully object to the same evidence by the same physicians, on the
ground that their testimony was prohibited by section 834 of the Code of
Civil Procedure. By failing to object to their testimony on the first trial
he waived his right to object to it on the second. The statute, as a mat-
ter of public policy, gave him a personal privilege, but he had intention-
ally surrendered it on the trial of the civil action, and the surrender was
unconditional by operation of law.

*People* v. *Bloom,* 124 App. Div. 767, affirmed.

(Argued May 26, 1908; decided October 6, 1908.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered
March 13, 1908, which affirmed a judgment of the Court of
General Sessions of the Peace in the county of New York,
rendered upon a verdict convicting the defendant of the
crime of perjury and also affirmed an order denying a motion
in arrest of judgment.

On the 21st of December, 1905, the defendant was con-
victed of the crime of perjury, alleged to have been com-
mitted under the following circumstances: On the 3rd of
January, 1905, he was sworn as a witness in his own behalf
upon the trial of an action brought by him against the Metro-
politan Street Railway Company to recover damages which
he alleged he had sustained through its negligence. He testi-
fied, in substance, that on the 9th of December, 1901, he was
a passenger on a car of said railway company, and when it
reached the point where he wished to alight, he notified the
conductor, and the car came to a full stop. As he was getting
off, with one foot on the step of the rear platform and one

hand on the handle, he put his other foot on the pavement, when the car suddenly started, he was thrown to the ground, dragged a short distance, and severely injured. Prior to this accident his health and physical condition had been perfect, and there was no trouble with his left arm or his right leg, both of which were in perfect condition. He had never suffered from paralysis and had never carried a cane. Right after the accident his left arm and his right leg became paralyzed so that for a long time he could not use them, and while his leg had improved a little at the time of the trial his arm was still so that he could not use it at all. His mouth also had become twisted and distorted. All this evidence was material to the issue in that action.

During that trial four physicians were sworn for the railway company, and no objection being made by Bloom or his counsel, testified that prior to December 9th, 1901, they had treated him professionally, and that some of the occasions were but a few weeks before the accident; that he was then suffering from total paralysis of the left side, left arm and left leg and that the left side of his face was involved a little; that this condition was caused by syphilis; that sometimes he carried one cane and sometimes two, and when he first came to the office of one of the physicians he was supported by two persons, and finally that he had permanent, chronic, organic paralysis. No objection was made to any part of this testimony, and the plaintiff there, but defendant here, through his counsel, cross-examined the physicians at length upon the subjects embraced by their direct evidence.

Bloom was indicted for perjury in giving said testimony on the trial of the civil action, and upon the trial of the indictment the People proved what he swore to on that occasion. They then called the four physicians who, subject to objection and exception, gave evidence as they had before, tending to show that the testimony of Bloom on the previous trial was utterly false. This evidence was objected to, generally and specifically, in various forms and especially upon the ground that the relation of physician and patient was shown

to have existed between the several witnesses and Bloom, and that the testimony was prohibited by section 834 of the Code of Civil Procedure. The trial court overruled the objection upon the ground that Bloom had waived the privilege of the statute.

Aside from the testimony of these physicians, there was much evidence tending to show that the defendant was not injured by the accident and that his ailments were of long standing. He swore to the contrary and was corroborated to some extent.

The jury found the defendant guilty of perjury, and a motion to arrest judgment having been denied, he was sentenced to imprisonment in state prison for the term of seven years. Upon appeal to the Appellate Division the judgment and order were affirmed, two of the justices dissenting. The defendant appealed to this court.

*D. Cady Herrick* and *Charles L. Cohn* for appellant. The trial court erred in permitting the physicians who testified upon the trial of the civil action to testify upon the trial of the indictment for perjury. (*People* v. *Elliott,* 172 N. Y. 146; *McKenny* v. *G. S., etc., R. R. Co.,* 104 N. Y. 352; *Grattan* v. *M. L. Ins. Co.,* 92 N. Y. 274; *Holden* v. *M. L. Ins. Co.,* 165 N. Y. 13; *Clifford* v. *D. & R. G. R. R. Co.,* 188 N. Y. 349.)

*William Travers Jerome, District Attorney* (*Robert C. Taylor* of counsel), for respondent. The trial court properly admitted the evidence of the physicians, because of the prior disclosure. By Bloom's consent, a complete disclosure of his ailments was made in open court. His privilege, therefore, was irrevocably gone. (*McKinney* v. *G. S., etc., R. R. Co.,* 104 N. Y. 352; *Morris* v. *N. Y., O. & W. R. Co.,* 148 N. Y. 88; *Schlotterer* v. *B., etc., F. Co.,* 89 App. Div. 508; *Clifford* v. *D. & R. G. R. R. Co.,* 188 N. Y. 349; *Hoyt* v. *Hoyt,* 112 N. Y. 493; *Holcomb* v. *Harris,* 166 N. Y. 257; *Pierson* v. *People,* 79 N. Y. 134; *People* v. *Harris,* 136

N. Y. 423; *People* v. *Hayes*, 140 N. Y. 484; *People* v. *Petmecky*, 99 N. Y. 415.)

VANN, J. The question presented for decision is whether the defendant, by failing to object to the testimony of the physicians on the trial of the civil action, waived his right to object to their testimony upon the trial of the criminal action. The parties to the two actions were not the same, although the defendant was a party to both. His adversary in the one was the Metropolitan Street Railway Company and in the other the People of the State of New York. The nature and object of the two actions were utterly unlike. One was a civil action prosecuted by him against a railway company for the recovery of a sum of money as damages for personal injuries caused by its negligence, while the other was a criminal action prosecuted against him by the People for perjury. The defendant did not cause or procure the evidence of the physicians to be admitted when the civil action was tried, but he made no attempt to prevent its admission, although it was within his power to keep it out, or to avail himself of the privilege conferred by the statute. He did not waive by acting, but by failing to act. Whether his failure to object was owing to inadvertence, or policy, or to some other reason, does not appear, and is not now material.

It is conceded that the defendant waived the benefit of section 834 so far as the trial of the civil action was concerned, and the real question is, what effect did that waiver have upon subsequent trials, civil or criminal? This depends upon the intention of the legislature, which must be gathered from a reasonable interpretation of its language, read in the light of previous legislation upon the subject and the decisions of the courts relating thereto.

While the prohibition is of long standing, and from the outset it has been held that it could be waived by the person for whose protection it was designed, still there was no statutory provision relating to waiver until 1877, when the Code of Civil Procedure, passed the previous year, went into effect.

(L. 1876, ch. 448, §§ 836, 1496.) That act provided that the prohibition should apply "to every examination of a person as a witness, unless  * * * the patient,  * * * is present or represented by counsel, and does not object to the testimony." Apparently this was regarded as too narrow, for the section in that form was in force but four months, when an amendment took effect by which the prohibition was made to apply "unless the provisions thereof are expressly waived by  * * * the patient  * * *." (L. 1877, ch. 416, §§ 1, 4.) This was general as to the power to waive, and the omission to prescribe the manner and effect left those subjects open to construction by the courts.

In 1891 an express waiver was allowed "upon the trial or examination," but while the statute provided when, it did not provide how the privilege could be waived, nor measure the effect of a waiver when once made. (L. 1891, ch. 381.) Since 1899 the waiver "must be made in open court, on the trial of the action, or proceeding, and a paper executed by a party prior to the trial, providing for such waiver" is "insufficient as such waiver." The statute further provides, however, that "the attorneys for the respective parties may, prior to the trial, stipulate for such waiver, and the same shall be sufficient therefor." (L. 1899, ch. 53.)

It is to be observed that since 1891 the waiver must be made "on the trial or examination," unless the attorneys prior to the trial stipulate otherwise. It is argued that the use of the definite article before the word "trial" indicates that one definite trial was meant. Even if this is so, still the question remains what effect does a waiver in one action have upon the trial of another action, the patient being a party to both? At no time has the legislature limited the effect of a waiver, when once made, although, in view of our decisions upon the subject and the frequent changes in the statute in other respects, such action would be probable, unless our construction was accepted as properly expressing its intention.

In 1895 we held in a case tried in 1893, when the amendment

of 1891 was in force, that a waiver as to one of two attending physicians was a waiver as to both. (*Morris* v. *N. Y., Ont. & W. Ry. Co.*, 148 N. Y. 88.) The judges all united with Judge O'BRIEN in saying that "it was the privilege of the plaintiff to insist that both physicians should remain silent as to all information they obtained at the consultation, but she waived this privilege when she called Dr. Payne as a witness and required him to disclose it. The plaintiff could not sever her privilege and waive it in part and retain it in part. If she waived it at all it then ceased to exist, not partially, but entirely. The testimony of Dr. Payne having been given in her behalf, every reason for excluding that of his associate ceased. The whole question turns upon the legal consequences of the plaintiff's act in calling one of the physicians as a witness. She then completely uncovered and made public what before was private and confidential. It amounted to a consent on her part that all who were present at the interview might speak freely as to what took place. The seal of confidence was removed entirely, not merely broken into two parts and one part removed and the other retained. * * * The principle decided in *McKinney* v. *Grand Street, etc., R. R. Co.* (104 N. Y. 352) supports the views herein expressed. That was a case where the plaintiff called and examined her own physician as to her physical condition on the first trial. On a subsequent trial he was called by the defendant and the same objection was made to his testimony that was made in the case at bar. This court held that it was admissible on the ground that the statutory prohibition having once been expressly waived by the patient, and the waiver acted upon, it could not be recalled, but the information was open to the consideration of the entire public, and the patient was no longer privileged to forbid its repetition. The reasoning of Chief Judge RUGER in support of these propositions in that case is applicable here. It furnishes a safe basis for holding that when a waiver is once made it is general and not special, and its effect cannot properly be limited to a particular purpose or a particular person. After the

information has once been made public no further injury can be inflicted upon such rights and interests of the patient as the statute was intended to protect, by its repetition at another time or by another person."

In the *McKinney* case, which was thus approved both in principle and in the reasoning used to support it, Chief Judge ·Ruger said : " The intent of the statute, in making such information privileged, is to inspire confidence between patient and physician, to enable the latter to prescribe for and advise the former most advantageously, and remove from the patient's mind any fear that she may be exposed to civil or criminal prosecution, or shame and disgrace, by reason of any disclosure thus made. * * * The patient cannot use this privilege both as a sword and a shield, to waive when it enures to her advantage, and wield when it does not. After its publication no further injury can be inflicted upon the rights and interests, which the statute was intended to protect, and there is no further reason for its enforcement. The nature of the information is of such a character that when it is once divulged in legal proceedings, it cannot be again hidden or concealed. It is then open to the consideration of the entire public, and the privilege of forbidding its repetition is not conferred by the statute. The .consent having been once given and acted upon cannot be recalled, and the patient can never be restored to the condition which the statute, from motives of public policy, has sought to protect. * * * The object of the statute having been voluntarily defeated by the party for whose benefit it was enacted, there can be no reason for its continued enforcement in such case. The maxim of ' *Cessante ratione legis cessat ipsa lex*' is of frequent application, and is a sound rule of interpretation. (Whart. Max. 17, p. 49.) It seems to us that this rule may properly be applied in determining the meaning of the word ' waived ' as used in the statute, and as supporting the conclusion that when once waived, and made effectual by publication, it is waived for all time."

Our latest utterance on the subject rests upon the same principle and supports it by reasoning along the same line.

It recognizes the doctrine of the *McKinney* and *Morris* cases as unaffected by the amendment of 1899 and expressly holds that that amendment was made for the purpose of preventing waivers by contract exacted by insurance companies in life policies. Among other things we said : " Clearly, the legislature did not mean that the patient could not waive the statute by calling the physician and examining him at the trial, or by not objecting if the · other party called him. * * * The amendment of 1899 must be read in the light of the object of the statute which was to prevent the disclosure of a patient's secrets against his will, not to interpose an obstacle to the administration of justice by suppressing facts already made public by the.patient himself in a legal proceeding." (*Clifford* v. *Denver & Rio Grande R. R. Co.*, 188 N. Y. 349, 352, 353. See, also, *Schlotterer* v. *Brooklyn & N. Y. Ferry Co.*, 89 App. Div. 508.)

We have quoted at length from these opinions, because they lay down a principle that governs the ruling in question. They establish the permanent effect of a waiver, and the legislature, although it has amended the section several times since the earlier decisions were made, has not deemed it necessary to make any change in this respect. If it was not satisfied with our construction of the statute that a waiver once made is general and not special, lasting and not temporary, it could easily have provided that it should be limited to a particular purpose, person or trial.· Its failure to do so has a bearing of special importance upon its intention, when the his_ tory of the provision and the course of our decisions are taken into consideration.

The object of the statute, as we have uniformly held, " is to prevent the disclosure of delicate and confidential matters, which might humiliate the patient in his lifetime and disgrace his memory when dead, so as to enable him to consult a physician in safety, knowing that his lips would be sealed by the law until he, himself, removed the seal." (*Clifford Case, supra*, p. 357.) Section 836, in its present form, expressly refers to " confidential communications and such facts as

would tend to disgrace the memory of the patient." Whether the waiver is by the affirmative action of the patient in calling forth the privileged testimony, or by his negative action in not preventing the other party from calling it forth, the logical effect is to deprive the statute of all further power of protection, because there is nothing left to protect against. The section no longer applies when the information that the statute would have kept secret if the patient had so elected has been made known in a judicial proceeding with his consent. After intentionally permitting its publication to the world by the physician, himself, upon one trial, it would seem almost grotesque to sustain an objection made upon a later trial that the evidence is privileged from disclosure because it might tend to humiliate or disgrace. There can be no disclosure of that which is already known, for when a secret is out it is out for all time and cannot be caught again like a bird and put back in its cage. The disgrace and humiliation were caused by the first trial, not by the second. The legislature did not intend to continue the privilege when there was no reason for its continuance and it would simply be an obstruction to public justice. The statute as a matter of public policy gave the defendant a personal privilege, but he intentionally surrendered it, and the surrender was unconditional by operation of law.

The judgment of conviction should be affirmed.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment affirmed.