OPINION OF THE COURT
John P. Collins, J.
The defendant is on trial, having been charged with four counts of manslaughter and reckless driving. The District Attorney seeks to offer testimony by two registered nurses and a certified social worker, employed at Montefiore Hospital. From these witnesses he seeks to elicit admissions said to have been made by the defendant. The substance of these statements are contained in the Montefiore Hospital records of Michael McHugh, the defendant.
The defendant seeks to prohibit this testimony, claiming the doctor-nurse privilege (see CPLR 4504) and the social worker privilege (see CPLR 4508).
The District Attorney responds, asserting that the defendant waived the privilege and that in any case, McHugh’s statements were not privileged.
The court can appreciate that both sides in this case regard these statements as being of critical importance. For our purposes, we must assume that the statements in the hospital records are admissions made by the defendant. It is not entirely clear that that is so. It may be that those statements are inadmissible hearsay. But on this motion, we must assume that we are dealing with admissions in order to reach the issue.
*824 The court, at the outset, also recognizes that any improper admission of privileged communications may well be reversible error. (See People v Decina, 2 NY2d 133.)
Pursuant to a decision of this court on April 23, a hearing was held in the instant matter. The court was closed to the public and the proceedings and the record sealed. On April 23, 24, and 25, testimony and exhibits were received and argument was entertained. Hearsay evidence was permitted.
The burden is on the defendant to establish that the privilege is applicable. (See People v Decina, supra; Polsky v Union Mut. Stock Life Ins. Co., 80 AD2d 777.)
The court now first turns to the issue of waiver: The issue is: If a defendant offers his hospital records during a CPL 710.30 (subd 1, par [a]) suppression hearing — for the purpose only of showing medical condition as relevant on the issue of voluntariness — and the hospital records contain incriminatory statements made to nurses and social workers and assumed to be otherwise privileged, has he waived the doctor-nurse and social worker privilege, allowing the District Attorney to offer at the trial the incriminatory and otherwise privileged statements made to nurses and social workers?
The court makes the following findings of fact:
1) During a CPL 710.30 (subd 1, par [a]) suppression hearing, the defendant expressed a desire to obtain North Central Bronx and Montefiore Hospital records to demonstrate to the court the serious medical condition of the defendant.
This he did to show that the statements of the defendant to the police and the extraction of a blood-alcohol sample were involuntary.
2) At the court’s request, the District Attorney prepared a subpoena duces tecum, which the court so ordered. The court made a number of telephone calls to Montefiore Hospital to aid in the production of the records.
3) For whatever reason, the records were produced by the hospital at the District Attorney’s office rather than at the court. The District Attorney turned the records over to the court.
*825 4) The court made the records available, both to the District Attorney and the defendant’s attorney.
5) At the conclusion of the suppression hearing, the defendant offered the hospital record for the purpose only of showing the physical condition and treatment of the defendant at Montefiore as it related to the issue of voluntariness of statements and the taking of a blood sample.
6) On the opening day of the trial, the District Attorney appeared in court with an attorney representing the hospital. The District Attorney moved orally for an order to show cause, seeking a declaratory judgment that no privilege was involved in the potential testimony of certain nurses. The court told the District Attorney to submit any such motion in writing. That was the last that the court heard about that motion.
The court makes the following conclusions of law on the issue of waiver.
The purpose of the privilege is twofold: The statute is intended to protect a physician from disclosing, as a witness, information acquired professionally from patients and to protect the patient also. The revisors who drafted the privilege stated, “Unless such conversations are privileged, men will be incidentally punished by being obliged to suffer the consequences of injuries without relief from the medical art, and without conviction of any offense. Besides, in such cases, during the struggle between legal duty on the one hand and professional honor on the other, the latter, aided by a strong sense of injustice and inhumanity of the rule, will, in most cases, furnish a temptation to the perversion or concealment of the truth, too strong for human resistance.”
The Legislature, which has conferred the privilege, may, if it chooses, limit its application. The court may not do so. (See Matter of City Council v Goldwater, 284 NY 296.)
Privilege is determined by an interpretation of statutes. Waiver is determined by analyzing case law.
The Court of Appeals in People v Bloom (193 NY 1, 10) has said, “The section no longer applies when the information that the statute would have kept secret if the patient *826 had so elected has been made known in a judicial proceeding with his consent. After intentionally permitting its publication to the world * * * it would seem almost grotesque to sustain an objection made upon a later trial that the evidence is privileged from disclosure because it might tend to humiliate or disgrace. There can be no disclosure of that which is already known, for when a secret is out it is out for all time and cannot be caught again like a bird and put back in its cage * * * The legislature did not intend to continue the privilege when there was no reason for its continuance and it would simply be an obstruction to public justice. The statute as a matter of public policy gave the defendant a personal privilege, but he intentionally surrendered it, and the surrender was unconditional by operation of law.” That is strong language.
The Bloom case (supra) was decided in 1908. Bloom had brought an earlier action for personal injuries against the railroad company. At that earlier trial, the railway company called doctors who had — at one time — treated Bloom for syphilis. They testified that his paralysis was due to that social illness. Bloom cross-examined the doctors in the negligence action. Based on his testimony at the civil trial, Bloom was later indicted for perjury. At the subsequent criminal trial, the District Attorney called the doctor who had testified for the railway company at the earlier civil trial. Bloom now claimed privilege. Bloom conceded that he had waived the privilege at the civil trial. The Court of Appeals held that his earlier waiver prevented Bloom from claiming the privilege at the criminal trial.
Our case, unlike the Bloom case (supra), however, does not involve the giving of testimony by the same witness in two separate proceedings. Unlike Bloom, the defendant in our case does not concede that he waived the privilege at any earlier proceeding.
Equally strong language, though, can be found in the case of McKinney v Grand St., Prospect Park & Flatbush R.R. (104 NY 352). There the Court of Appeals said, “The patient cannot use this privilege both as a sword and a shield, to waive when it enures to [his] advantage, and wield when it does not” (p 355).
*827 The McKinney case (supra) was decided in 1887. McKinney, the plaintiff, sued to recover damages for personal injuries and called a treating physician as a witness. In a subsequent trial of the same action, the defendant sought to call the same doctor as its witness. Plaintiff claimed privilege. The Court of Appeals held the privilege had been waived.
The McKinney case (supra) involved a retrial. This is not the situation in our case. McKinney’s lawsuit was for personal injury. The law is now clear that the commencement of a personal injury suit causes an automatic waiver of the privilege. (See Koump v Smith, 25 NY2d 287.)
In their papers, the People cite People v Decina (2 NY2d 133, supra). Decina is important, but not necessarily for the purpose that the People cite it for. Decina was charged with criminal negligence in the operation of a vehicle. The charge was that he caused the death of four young children. A doctor stated that while pursuing his duties as a physician, he obtained an admission from the defendant. This conversation was overheard by a guard stationed in the doorway. The court held the admission of privileged communication into evidence was reversible error. The Decina decision is important on the issue of waiver, because what it really says is, to grant a privilege on which a defendant can rely, and then to dissolve it and use against the defendant the very matter the law guaranteed to protect, makes a mockery of justice.
A court should not apply the principle of waiver in an arbitrary or ritualistic fashion. It must consider the totality of the circumstances, the nature of the testimony already received and it may even consider, on the issue of waiver, whether the proffered testimony is, indeed, privileged. (See People v Runion, 3 NY2d 637.) The court must consider at what point of a lawsuit, the testimony — said to be the basis of the waiver — was offered, by whom, how, and in what sort of proceeding. Was the evidence or testimony accepted with limitations? What role did the court play in publicizing the testimony or evidence now said to be the basis of a waiver?
The court must also reflect on modern legal thought on the issue. Legal commentators now recognize that a partial *828 waiver of a privilege is possible and that a privilege is not waived if the disclosure was by court order subject to a limitation as to its use. (See NY Proposed Code of Evidence, § 502, Comment; see, also, International Business Machs. Corp. v Sperry Rand Corp., 44 FRD 10.) The New York Proposed Code of Evidence recognizes that such an attitude is required “to expedite the litigation process”. (See § 502, Comment, p 75.)
In our own case, the first publication or disclosure of the defendant’s hospital record was by the court. The court ordered the hospital record and ordered it turned over to the District Attorney as well as the defendant. The record was offered in evidence by the defendant during a hearing permitted by statute. This suppression hearing was unknown to the law before the 1960’s. The Supreme Court has held that the defendant receives certain protection from any self incriminatory evidence given at a suppression hearing (see Simmons v United States, 390 US 377). In offering the hospital records at the hearing the defendant attempted to limit its use and offered it only for a specific purpose.
The court rules that the defendant by his action or inaction at the suppression hearing did not execute a complete waiver of privilege. At most, there was a partial waiver of privilege, limited to the offer made by the defendant at the suppression hearing. There was no waiver as to evidence now sought to be introduced by the District Attorney.
The court turns next to the issue of whether a privilege exists.
CPLR 4504 (subd [a]) states in pertinent part, “[u]nless [waived] a person authorized to practice medicine [or] registered professional nursing * * * shall not be allowed to disclose any information which [was] acquired [(!)] in attending a patient in a professional capacity, and [(2)] which was necessary to enable him to act in that capacity.”
CPLR 4508 states in pertinent part, “[a] person duly registered as a certified social worker under the provisions of article [154] of the educational law shall not be required to disclose a communication made by his client to him, or his advice given * * * except [when waived by the client]”.
*829 By clear and convincing evidence the defendant has established the following facts at the hearing:
1) the statements that the District Attorney seeks to offer, if made by the defendant, were made by him either to a registered nurse or certified social worker acting in a professional capacity.
2) the statements were made in order to enable a doctor to act in his professional capacity.
3) the information was intended to be confidential.
4) the information was necessary for treatment.
The court makes the following conclusions of law.
It is clear that a defendant asserting the privilege has the burden of establishing that the witness whose testimony is sought to be excluded acquired such information while attending the patient in a professional capacity; that the information was necessary to enable him to act in that capacity and that information was intended to be confidential. This he has done in our case.
In determining whether or not information for treatment is privileged the question as to whether or not actual treatment is undertaken is not decisive. The requisite relationship will arise if the physician examines the patient in order to prescribe for him.
Was the information more than such nonprofessional matters as details of an accident entirely unrelated to treatment? (See People v Decina, 2 NY2d 133, 143, supra.) Here it was.
Doctors still regard it important in this day to treat the whole man. General state of mind is surely related to physical condition. (See Massachusetts Mut. Life Ins. Co. v Brei, 311 F2d 463.)
The privilege exists here and the defendant may claim it.