OPINION OF THE COURT
Gerald Sheindlin, J.
The defendant stands indicted for attempted murder in the second degree and related charges. A Huntley hearing was held before this court on March 6, 1996 and March 12, 1996. The People called Detective Helen Gottleib and Police Officer Jonathan Rodriguez. The defense did not present any witnesses. The court finds the testimony of the People’s witnesses to be forthright, consistent, reliable and have the force and flavor of credibility. The court makes the following findings of fact and conclusions of law.
FINDINGS OF FACT
On July 6, 1994, Helen Ayala was shot and seriously injured inside apartment number 3 at 868 Faile Street. She resided at the premises with her husband, the defendant, and their children. During the investigation conducted that same day, Detective Helen Gottleib interviewed the defendant as both the husband of the victim and a possible witness at the 41st Precinct Detective Squad. The defendant voluntarily appeared at the precinct unaccompanied by any police personnel: he was not a target of the investigation. Detective Gottleib did not advise the defendant of his Miranda warnings before question *815 ing him. The defendant claimed that he was at the movies with his two children and found his wife shot in the head when they returned to the apartment. The conversation lasted approximately 20 to 25 minutes. When the interview concluded, the defendant returned home.
Approximately one month later, on August 4, 1994 at about 8:20 p.m., Police Officer Jonathan Rodriguez and Sergeant Furlong responded to apartment number 3 at 868 Faile Street pursuant to a radio run, which indicated that a male "EDP” (an emotionally disturbed person) with a history of mental illness was threatening to kill someone. When he entered the apartment, Officer Rodriguez observed the defendant lying on the couch. Police Officer Young, who had previously arrived at the location with her partner, Officer Hernandez, began asking the defendant about his mental condition. Without any relevance to the questions posed, the defendant blurted out that he had shot his wife. He stated that he "blasted” his wife Helen in the head with a .22 caliber weapon, that he had to get rid of her, and that he had to finish the job by shooting her in the head. He admitted lying to the police when he first spoke to them. No one had questioned him about the shooting or mentioned it in any way. Indeed, Officer Rodriguez was completely unaware of the earlier shooting. He learned of it during the defendant’s rambling statement.
Once the defendant stated that he had shot his wife, he was placed under arrest and handcuffed. A foreign film crew that had been riding with a police car that had responded to the scene memorialized the defendant’s statements on videotape. The camera crew remained on the street outside the building when the police entered the ground floor location and filmed the events through a window that provided a view inside the living room of the apartment.
Officers Rodriguez and Young thereafter transported the defendant to Bronx Lebanon Fulton Hospital for a psychiatric evaluation. At the hospital, Officer Rodriguez advised the defendant of his Miranda warnings by reading them from his memobook. The defendant indicated that he understood his rights but declined to make a statement. Neither officer asked him any questions. Dr. Torres examined the defendant in Officer Rodriguez’ presence. The defendant admitted to the doctor that he shot his wife. He stated that he took his children to the movies after shooting his wife and that he shot her a second time when they returned to the apartment and he saw that she was still alive. Officer Rodriguez did not direct the doctor *816 to ask the defendant any particular question nor did he participate in the interview in any way. He merely observed the examination and provided security. The defendant remained handcuffed at all times during his stay at the hospital.
CONCLUSIONS OF LAW
The People seek to introduce (1) the defendant’s statement to Detective Gottleib at the precinct on July 6, 1994 (hereafter the Gottleib statement); (2) the defendant’s statement on August 4, 1994, to Officer Young inside 868 Faile Street, apartment number 3 (hereafter the Young statement); and (3) the defendant’s statement later that same day to Dr. Torres at the hospital (hereafter the hospital statement).
At a hearing to consider suppression of a defendant’s statement, the People must prove beyond a reasonable doubt that the statement was voluntary to permit its admission into evidence. (People v Anderson, 69 NY2d 651 [1986]; People v Witherspoon, 66 NY2d 973 [1985].) A defendant in custody must be given Miranda warnings before being interrogated regardless of the severity of the offense. (Berkemer v McCarty, 468 US 420 [1984].) Waiver of the rights secured by the Miranda warnings must be knowingly and voluntarily made. (People v Sirno, 76 NY2d 967, 968 [1990]; People v Williams, 62 NY2d 285, 288 [1984]; CPL 60.45.)
The issue of whether a defendant was in custody when questioned by the police is a question of fact. (See, People v Centano, 76 NY2d 837, 838 [1990].) The court must determine whether a reasonable person, innocent of any crime, would have believed he was in custody under the circumstances. (See, People v Centano, supra, at 838; People v Yukl, 25 NY2d 585, 589 [1969].)
Spontaneous statements made without apparent external cause by a defendant in custody are admissible in evidence. (People v Lanahan, 55 NY2d 711, 713 [1981].) However, not every statement by the police comprises an interrogation. (People v Hopkins, 58 NY2d 1079, 1082 [1983]; People v Rivers, 56 NY2d 476, 479 [1982].) The test, using objective standards, is whether the defendant’s statement was "triggered by police conduct which should reasonably have been anticipated to evoke a declaration from the defendant.” (People v Lynes, 49 NY2d 286, 295 [1980]; People v Huffman, 61 NY2d 795, 797 [1984].)
*817 THE GOTTLIEB STATEMENT
At the time he was interviewed by Detective Gottleib, the defendant had arrived at the precinct alone. The police did not consider the defendant a suspect in the shooting. He voluntarily submitted to questioning and left the precinct on his own accord when the conversation ended. He was not handcuffed during the questioning, which was investigatory in nature. No view of the evidence suggests that the defendant was in custody when interviewed by Detective Gottleib. Accordingly, the police were not required to advise the defendant of his Miranda warnings and this statement is admissible in evidence.[1]
THE YOUNG STATEMENT
When the police were attempting to ascertain the defendant’s physical and mental condition to investigate the report of an emotionally disturbed person at the location, Officer Young asked the defendant about his physical and mental condition. The defendant replied that he had shot his wife. No one had asked the defendant about the earlier shooting of his wife. In fact, there is no evidence that any officer present in the apartment on August 4, 1994 was aware of the incident that had occurred there on July 6, 1994. The police did not do or say anything to the defendant to trigger his statement. Asking a question which seeks a response about a defendant’s physical or emotional condition cannot reasonably anticipate an admission that the defendant had committed a crime. (See, People v Lynes, supra.) Therefore, this statement is admissible in evidence.
THE HOSPITAL STATEMENT
After being advised of his Miranda warnings and declining to make a statement to the police, the defendant voluntarily spoke to Dr. Torres and admitted that he shot his wife. Officer Rodriguez did not do or say anything to the defendant to provoke this statement. In addition, there is no evidence that Dr. Torres was acting as an agent of the police. Accordingly, the statement is admissible on constitutional grounds, but may be precluded based on the doctor/patient privilege. The facts herein present an issue of first impression, to wit: may a police officer testify about a conversation between a prisoner he is guarding and the physician treating that prisoner?
CPLR 4504 (a) provides that information obtained by a doctor while treating a patient and which was necessary for the *818 doctor to act as a physician is confidential and privileged unless the patient waives the doctor/patient privilege.[2] Three essential elements must be established to assert the privilege: (1) there must be a relationship between the doctor and the patient; (2) the information in question must have been obtained during the course of treatment; and (3) the information obtained must have been necessary for diagnosis or treatment. The party asserting the privilege bears the burden of showing its application in a particular case. (People v Decina, 2 NY2d 133, 141 [1956].)
The privilege extends to information necessary for diagnosis and treatment[3] but does not include observations of a patient’s condition which would be obvious to a layperson. (See, e.g., People v Hedges, 98 AD2d 950 [4th Dept 1983] [doctor permitted to testify to observations that the defendant was intoxicated such as odor of alcohol on the breath and slurred speech]; People v Beneway, 148 Mise 2d 177, 178-180 [Columbia County Ct 1990] [emergency room doctor permitted to testify to observations of intoxication].) The presence of a third party who overhears a conversation between a doctor and patient can destroy the privilege and the third party may be compelled to testify to what the patient communicated to the doctor even if the doctor and patient cannot. (See, e.g., Prink v Rockefeller Ctr., 48 NY2d 309, 315, n 2 [1979].)
In People v Decina (supra), the defendant’s car swerved uncontrollably and struck six schoolgirls, killing four of them. The defendant was injured and appeared dazed at the scene. He told a bystander that he had lost consciousness immediately before the accident. He was placed under arrest and brought to a hospital under police guard. While the defendant was being examined, the police guard remained in the doorway of the room, about six to seven feet away from the defendant, to maintain security. The guard then overheard a conversation between the defendant and the doctor in which the defendant described the car accident and related his prior medical history of epilepsy. At trial, the doctor was permitted to testify *819 concerning the defendant’s epilepsy, including that the defendant suffered from an attack at the time of the incident and that he was aware of his propensity to suffer such attacks. The doctor’s testimony was the only evidence on these three issues.
The Court of Appeals ruled that the admission of the doctor’s testimony concerning the defendant’s statements was error. The defendant had established that a doctor/patient relationship existed. (People v Decina, supra, at 142.)[4] Statements describing the medical history of a disease for which the defendant was being treated were obtained during the course of treatment and were privileged because they "cannot be said to be information unnecessary for treatment.” (People v Decina, supra, at 143.) The Court held that the test to determine whether the presence of a third party destroys the privilege is: "whether in the light of all the surrounding circumstances, and particularly the occasion for the presence of the third person, the communication was intended to be confidential and complied with the other provisions of the statute”. (People v Decina, supra, at 145.) The privilege had not been destroyed or waived because "the guard’s presence was ordered by command of the public authorities”. (People v Decina, supra, at 144.) The surrounding circumstances were that the defendant was in custody and the third party’s presence was required by lawful authority.
In the instant case, the police escorted the defendant to the hospital for a psychiatric evaluation. Once the defendant voluntarily began speaking with Dr. Torres, the treating psychiatrist, a doctor/patient relationship was established. During Dr. Torres’ examination and treatment of the defendant, the defendant described the shooting of his wife and admitted that he was the one who shot her. The statements were necessary for diagnosis and treatment because the examination was psychiatric in nature and sought to ascertain the defendant’s psychological condition. Therefore, the dispositive question is whether Officer Rodriguez’ presence during the interview waives the privilege.
Officer Rodriguez was required to remain with the defendant at all times, including the examination by and interview with Dr. Torres. The defendant did not have the option or ability to request a private session with the psychiatrist. His post- *820 Miranda refusal to speak with the police coupled, with his voluntary conversation with the psychiatrist clearly indicates that he intended his statement to Dr. Torres to be confidential. Therefore, in this case, where the presence of the third party who overheard the statements was required by law and was absolute, the privilege cannot be said to have been waived by the officer’s presence.
To allow this statement to be admitted into evidence would be to rule that a prisoner must forego his right against self-incrimination to obtain necessary medical diagnosis and treatment. To require the relinquishment of a constitutional right as a condition of medical diagnosis and treatment for persons placed under arrest or incarcerated would be unconscionable. "[T]o grant a privilege on which a defendant can rely, and then to dissolve it and use against the defendant the very matter the law guaranteed to protect, makes a mockery of justice.” (People v McHugh, 124 Misc 2d 823, 827 [Sup Ct, Bronx County 1984] [defendant did not waive privilege by offering medical records into evidence at suppression hearing for the limited purpose of proving that his medical condition affected the issue of voluntariness].) There is no exception to the doctor/patient privilege which would require admission of this statement.[5]
This court notes that various cases have held that third parties who overheard statements to medical personnel may testify as to these statements. However, these cases are inapplicable to the facts of the instant case. In People v Jones (169 AD2d 986, 988 [3d Dept 1991], lv denied 77 NY2d 996 [1991]), the defendant’s statement to a nurse was ruled admissible because it was overheard by a police officer but was not "induced, provoked or encouraged by the police”. In People v Alaire (148 AD2d 731, 735-737 [2d Dept 1989]), the defendant’s statements to a social worker which were made in the presence of the police and overheard by them were admissible in evidence because the social worker was acting on behalf of the police. Neither case discussed the applicability of the doctor/ patient privilege nor considered the teachings of People v Decina (2 NY2d 133, supra). Neither case considered whether the *821 officer’s presence was required or whether the defendant could have requested a private consultation with the medical personnel. Both cases relied on People v Harris (57 NY2d 335, infra), which this court finds is clearly distinguished from the instant case.
In People v Harris (57 NY2d 335 [1982]), the Court of Appeals held that the presence of a third party waived the attorney/client privilege. The defendant had been read her Miranda warnings several times and had made statements to the police. After being given the opportunity to make a telephone call, she requested to speak with a friend who was a lawyer. A police officer accompanied the defendant to a bedroom where the house manager’s husband was present and where another police officer had placed the call. The defendant picked up the phone and immediately admitted killing the deceased. The officer who had accompanied the defendant into the bedroom overheard the statement as he exited the room.
The statement was held to be admissible in evidence. Although the defendant’s right to counsel had attached with her request to speak with an attorney, the police had not done anything to induce this statement. They had not maneuvered, either deliberately or subtly, to overhear the conversation with the attorney. The Court noted "that the officer had no opportunity to remove himself from earshot before [the defendant] made the damaging statement”. (People v Harris, supra, at 342.) With regard to the issue of the attorney-client privilege, the Court stated: "This [attorney-client] privilege protects those communications made by a defendant to an attorney that are intended to be confidential * * * It cannot be said, on the facts of this case, that [the defendant], in speaking over the telephone to a lawyer in the known presence of both a police officer and the house manager’s husband, intended this communication to be confidential. Generally, communications made in the presence of third parties, whose presence is known to the defendant, are not privileged from disclosure”. (People v Harris, supra, at 343 [citations and footnote omitted].)
The instant case is distinguishable from People v Harris (supra) in several important respects. First, in Harris, the police officer and the house manager’s husband were both in the bedroom when the statement was made. In the case at bar, Officer Rodriguez was the only person in the room when the defendant spoke with Dr. Torres. Second, the police officer in Harris appears not to have been required to remain with the defendant. In fact, he was attempting to leave the room to *822 provide some privacy to the defendant. Here, Officer Rodriguez was required to remain with the defendant to guard him and to maintain the safety of all those with whom he came into contact. While the defendant in People v Harris had the ability and opportunity to have a private conversation with her attorney over the phone, the defendant in the case at bar had no option to request a private consultation w'th the psychiatrist.
For the foregoing reasons, the defendant’s motion to suppress the Gottleib and Rodriguez statements is denied and the motion to suppress the Torres statement is granted.

. In fact, after the hearing testimony concluded, the defense counsel withdrew that portion of his motion which sought suppression of this statement.

. Psychiatrists fall within the ambit of CPLR 4504, which includes physicians and various medical personnel. CPLR 4507 is limited to psychologists.

. See, e.g., People v Christopher (101 AD2d 504, 530-531 [4th Dept 1984], revd on other grounds 65 NY2d 417 [1985] [statement to army staff nurse not privileged because not intended to remain confidential and because it did not contain information necessary for treatment]); People v Bostic (121 AD2d 459 [2d Dept 1986] [statement to nurse ruled admissible because information relayed in statement not necessary to enable nurse to treat defendant]).

. The fact that the doctor in question did not actually treat the defendant but merely diagnosed his condition based on other physicians’ findings did not preclude the finding that a doctor/patient relationship had been established. (People v Decina, supra, at 142.)

. The doctor /patient privilege was created by statute and did not exist at common law. (Dillenbeck v Hess, 73 NY2d 278, 283 [1989].) Accordingly, exceptions to the privilege must be recognized and created by the Legislature. (See, e.g., Matter of Grand Jury Investigation of Onondaga County, 59 NY2d 130, 135-136 [1983] [no public interest exception]; People v Ackerson, 149 Misc 2d 882, 883-884 [Monroe County Ct 1991] [no privilege for emergency medical technicians].)