OPINION OF THE COURT
Thomas J. DiSalvo, J.
*456 The defendant was charged with being an unlicensed driver (Vehicle and Traffic Law § 509 [1]), failure to keep right (Vehicle and Traffic Law § 1120 [a]), common-law driving while intoxicated (Vehicle and Traffic Law § 1192 [3]), and per se driving while intoxicated (Vehicle and Traffic Law § 1192 [2]), as the result an incident that occurred on July 18, 2004 at 1:57 а. m. on Lake Road in the Town of Webster. Officer Gretchen Parsons, the arresting officer, was dispatched to the scene based on a report of a motor vehicle accident. At the time the officer arrived at the location of the accident, the defendant was being treated by emergency medical personnel for some minor injuries. Upon arrival at said location, Officer Parsons began her investigation of this matter. However, the actual arrest took place prior to the defendant being transported to Rochester General Hospital. The defendant was given appearance tickets and was directed to appear in Webster Justice Court at a later date. After an initial adjournment, the defendant eventually appeared in court without an attorney on September 15, 2004. The matter was adjourned to allow the defendant to retain counsel. The defendant appeared with his attorney on October б, 2004, and the matter was adjourned for motions. Eventually the case was set down for a probable cause and Huntley hearing on February 11, 2005. Based on the testimony and evidence presented, the court found that the arresting officer had “reasonable cause,” as defined by CPL 70.10 (2), to arrest the defendant on the charges herein. In addition, the court, at that time, denied defense counsel’s motion to suppress various statements made by the defendant. However, defense counsel requested and the court granted said request to address by way of a written summation and memorandum of law the right to further address the issue of the admissibility of statements made by the defendant to certain medical providers in the presence of Officer Parsons.
Issue Presented
Does the “doctor-patient” privilege, accorded by CPLR 4504 (a), prohibit a police officer from testifying about a conversation the officer overheard between a defendant and a medical professional as defined by said statute?
Facts of the Case
The first officer arriving on the accident scene was Sergeant Kevin A. Hall, who had an initial conversation with the defendant. Upon her arrival, Officer Parsons was directed to continue *457 the investigation of the matter. Based on her observations of the defendant, Officer Parsons determined that the defendant was intoxicated at 2:39 a.m., but had determined that the defendant was under arrest at 2:22 a.m. However, by this time the defendant had been placed in the West Webster ambulance for transport to Rochester General Hospital. Upon her arrival at the hospital emergency department, Officer Parsons introduced herself to the triage nurse and began to observe said nurse interview the defendant. The interview in question began at approximately 3:05 a.m. During said interview, the defendant made various incriminating statements. Those statements are set out in the GPL 710.30 notice and the documents attached thereto.[1] It is uncontroverted that the defendant was aware of the officer’s presence during the interview. The defendant maintains that the statements made during the nurse’s interview should be suppressed, because they are covered by CPLR 4504 (a).
Legal Analysis
CPLR 4504 (a) states in pertinent part as follows:
“Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing, licensed practical nursing, dentistry, podiatry or chiropractic shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.”
This provision is specifically directed at the medical professional providing a necessary medical service. No direction or prohibition is directed toward a third party, who may be present during a conversation between an individual and a designated medical provider. Thus the question arises, in this case, as to whether the defendant waived his right to confidentiality by speaking to a medical provider in the presence of a police officer, in terms of the ability of the officer to testify as to what was overheard.[2]
In the instant case, as previously indicated, Officer Parsons determined at the scene of the motor vehicle accident, at ap *458 proximately 2:39 a.m., that the defendant was in fact intoxicated. Soon after that determination was made, the defendant was transported to Rochester General Hospital by an ambulance of the West Webster Fire Department. Officer Parsons followed the ambulance in her police car. The court takes judicial notice of the fact that the defendant would have arrived at the hospital at about 3:00 a.m. In fact, the addendum to the officer’s supporting deposition indicates that the defendant was interviewed, in her presence, by the triage nurse at 3:05 a.m. It was during that interview that the incriminating statements were made.
The officer testified at the pretrial hearing that she made the arrest at 3:30 a.m. However, the supporting deposition indicates the time of arrest to be 2:22 a.m. on the morning of July 18, 2004.[3] In any event, despite the discrepancy in times, the facts show that once the officer made the determination that the defendant was intoxicated, she acted in every way as if the defendant was under arrest. Thus, the court holds that the defendant was in custody as he was being transported to the hospital. This means that he was definitely in the custody of Officer Parsons during the interview by the triage nurse.
Certainly, CPLR 4504 (a) extends the doctor-patient privilege to a medical professional, such as nurse Langton. It is also true that, pursuant to CPLR 4504 (a), at the time Officer Parsons overheard the conversation between the defendant and the triage nurse, said nurse was “attending a patient in a professional capacity” and she was obtaining information which would allow her “to act in that capacity.” Lastly, knowledge of what was recently ingested by the defendant was necessary information needed to treat the defendant.[4] In discussing the doctor-patient privilege, the Court of Appeals has held that “[t]he rationale supporting it is that the protection of confidential information from involuntary disclosure will promote uninhibited communication between patient and physician for the purpose of obtaining appropriate medical treatment.” (People v Sinski, 88 NY2d 487, 491 [1996].)
*459 In this case, the defendant was speaking to a triage nurse, i.e., Diane Langton, presumably a registered nurse, in the emergency department of Rochester General Hospital at 3:05 a.m. The defendant was in custody at that time, based on the stated arrest time of 2:22 a.m. or the de facto arrest time of 2:39 a.m.[5] As a result, the officer was required to stay with defendant. In a similar fact pattern it was held that “where the presence of the third party who overheard the statements was required by law and was absolute, the privilege cannot be said to have been waived by the officer’s presence.” (People v Sanders, 169 Misc 2d 813, 820 [1996].)
Therefore, any statements made by the defendant to nurse Langton as set out in the CPL 710.30 notice are hereby determined to be covered by the doctor-patient privilege, as defined by CPLR 4504 (a). Pursuant to said finding, said statements are hereby suppressed.

. There are no statements alleged to have been made by the defendant to the emergency medical technicians that are the subject of the suppression motion.

. There is no question that under the facts of the case that nurse Lang-ton would be bound by the doctor-patient privilege. (See People v Decina, 2 NY2d 133 [1956].)

. There was no testimony produced at the pretrial hearing, nor is there any mention in the supporting deposition herein, of the defendant having been advised of his Miranda rights.

. “Three essential elements must be established to assert the privilege: (1) there must be a relationship between the doctor and the patient; (2) the information in question must have been obtained during the course of treatment; and (3) the information obtained must have been necessary for diagnosis or treatment. The party asserting the privilege bears the burden of showing its application in a particular case. (People v Decina, 2 NY2d 133, 141 [1956].)” (People v Sanders, 169 Misc 2d 813, 818 [1996].)

. This is the time that Officer Parsons made the determination, based on various observations of the defendant by her, that he was in fact intoxicated.