HAGEMAN, APPELLEE, *v.* SOUTHWEST GENERAL HEALTH
CENTER ET AL., APPELLEES; BELOVICH, APPELLANT.

[Cite as *Hageman v. Southwest Gen. Health Ctr.,*
119 Ohio St.3d 185, 2008-Ohio-3343.]

(No. 2007–0376—Submitted January 22, 2008—Decided July 9, 2008.)

Moyer, C.J.

## I

{¶ 1} This case presents the issue of whether an attorney may be liable for the unauthorized disclosure to a third party of medical information regarding an opposing party that was obtained through litigation. For the following reasons, we hold that an attorney may be held liable for such an unauthorized disclosure. Therefore, we affirm the judgment of the court of appeals and remand the case for further proceedings.

## II

{¶ 2} In January 2003, appellee, Kenneth Hageman, began meeting with Dr. Thomas Thysseril for psychiatric treatment. In his first treatment session, Hageman admitted having homicidal thoughts about his wife. Dr. Thysseril determined that Hageman has bipolar disorder and treated him for this condition through July 2003.

{¶ 3} In February 2003, Hageman's wife filed for divorce in the Cuyahoga County Court of Common Pleas. Appellant, Barbara Belovich, served as her attorney in this matter. Hageman filed a counterclaim, in which he sought legal custody of the couple's minor child.

{¶ 4} While both the divorce case and Hageman's psychiatric treatment were ongoing, Hageman allegedly assaulted his wife at their home, and criminal charges were brought against him. Shortly thereafter, his wife sought and received a civil domestic-violence protection order. The order gave her temporary custody of the couple's child and suspended Hageman's contact and visitation rights until a full hearing could be held.

{¶ 5} In preparation for this hearing, Belovich issued subpoenas to Dr. Thysseril, seeking the production of Hageman's medical records. Belovich believed that Hageman had waived his privilege to those records by filing the

counterclaim for custody in the divorce action, given the decision of the Court of Appeals for Cuyahoga County in *Gill v. Gill*, 8th Dist. No. 81463, 2003-Ohio-180, 2003 WL 132447.[1] Although Hageman did not sign a release for this information, Dr. Thysseril's office faxed Hageman's records to Belovich.

{¶ 6} On the date of the civil-protection-order hearing, Belovich met with the prosecutor in the criminal case against Hageman. The prosecutor was attending the hearing as an observer and was not scheduled to testify or otherwise participate in the hearing. Nonetheless, Belovich gave the prosecutor a copy of Hageman's medical records that she had received from Dr. Thysseril.

{¶ 7} Before the scheduled hearing, Hageman and his wife entered into a separation agreement that was ultimately incorporated into a divorce decree entered by the trial court. Hageman's medical records were therefore never admitted into evidence in the divorce/protection-order case. Likewise, they were not admitted in the criminal matter, and Hageman was ultimately acquitted.

{¶ 8} Shortly after the separation agreement was completed, Hageman brought the instant action against Belovich, Hageman's ex-wife, Dr. Thysseril, Oak Tree Physicians (Dr. Thysseril's employer), and Southwest General Health Center (the hospital housing Oak Tree). Hageman alleged that the defendants had improperly disclosed his medical records without his authorization. The trial court granted summary judgment to the defendants on all of Hageman's claims. The court of appeals affirmed the trial court's holding in regard to the motions for summary judgment filed by all the defendants except Belovich. *Hageman v. Southwest Gen. Health Ctr.*, Cuyahoga App. No. 87826, 2006-Ohio-6765, 2006 WL 3743095, ¶ 29–30. In reversing the trial court's holding as to Belovich, the court of appeals stated that she had "overstepped her bounds as [the ex-wife's] divorce attorney when she disseminated information regarding [Hageman's] psychiatric condition to the prosecution." Id. at ¶ 31. We accepted Belovich's discretionary appeal. *Hageman v. Southwest Gen. Health Ctr.*, 114 Ohio St.3d 1410, 2007-Ohio-2632, 867 N.E.2d 844.

## III

{¶ 9} In general, a person's medical records are confidential. Numerous state and federal laws recognize and protect an individual's interest in ensuring that his or her medical information remains so. For example, the Ohio Public Records Act prohibits medical records maintained by public institutions from being released pursuant to a public-records request: " 'Public record' means

---

1. In *Gill*, the Court of Appeals for Cuyahoga County held that a parent who seeks custody of a minor child in a divorce action makes his or her mental condition an issue in the case, and thus the physician/patient privilege "does not apply." *Gill*, 2003-Ohio-180, 2003 WL 132447, ¶ 19, citing *Neftzer v. Neftzer* (2000), 140 Ohio App.3d 618, 748 N.E.2d 608.

records kept by any public office * * * [but] does not mean any of the following: (a) Medical records."[2] R.C. 149.43(A)(1)(a). Likewise, the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA") prevents health-care providers from disclosing health information except in certain specific circumstances. See generally 45 C.F.R. 164.502. Physician-patient and psychologist-patient privileges have been codified in Ohio to deny the use of such information in litigation except in certain limited circumstances. See R.C. 2317.02(B)(1) and 4732.19. Physical and mental-health examinations of a litigating party may be ordered only when relevant and "for good cause shown." See Civ.R. 35(A).

{¶ 10} We explicitly recognized and applied this basic policy of confidentiality in *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d 395, 715 N.E.2d 518. In that case, we confronted issues arising from the disclosure of health-care information obtained through a physician-patient relationship. After surveying cases in Ohio and beyond, we recognized that the breach of patient confidentiality is a palpable wrong. Id. at 400, 715 N.E.2d 518. However, we also determined that such an injury is difficult to remedy appropriately. Id.

{¶ 11} Finding the various methods that courts have used to address such claims (including theories like invasion of privacy, defamation, breach of contract, and others) to be unsatisfactory, we recognized a separate tort for breach of confidentiality related to medical information. Id. at 400–401, 715 N.E.2d 518. We defined the boundaries of this tort by recognizing two related causes of action: one against physicians and hospitals that disclose confidential medical information to a third party without authorization or privilege to do so, and one against third parties who induce physicians or hospitals to disclose such information. Id. at paragraphs one and three of the syllabus.

{¶ 12} Hageman has cited *Biddle* as one of the underlying justifications for his claim against Belovich. In her sole proposition of law, Belovich argues that the causes of action recognized in *Biddle* do not apply to attorneys disclosing health-care information lawfully obtained in the course of litigation, even if the disclosure to a third party is otherwise unauthorized.

{¶ 13} Notwithstanding that the specific causes of action recognized in *Biddle* apply imperfectly to the facts in this case, we conclude that the rationale for our decision there applies here. *Biddle* stressed the importance of upholding an individual's right to medical confidentiality beyond just the facts of that case. "[I]t is for the patient—not some medical practitioner, lawyer, or court—to

---

2. For the purposes of the Public Records Act, a "medical record" is defined as "any document or combination of documents, except births, deaths, and the fact of admission to or discharge from a hospital, that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is generated and maintained in the process of medical treatment." R.C. 149.43(A)(3).

determine what the patient's interests are with regard to personal confidential medical information." *Biddle*, 86 Ohio St.3d at 408, 715 N.E.2d 518. As the Supreme Court of California has observed in discussing the related concept of a right to privacy, such a right " 'is not so much one of total secrecy as it is of the right to *define* one's circle of intimacy—to choose who shall see beneath the quotidian mask.' " (Emphasis sic.) *Hill v. Natl. Collegiate Athletic Assn.* (1994), 7 Cal.4th 1, 25, 26 Cal.Rptr.2d 834, 865 P.2d 633, quoting *Briscoe v. Reader's Digest Assn., Inc.* (1971), 4 Cal.3d 529, 534, 93 Cal.Rptr. 866, 483 P.2d 34. If the right to confidentiality is to mean anything, an individual must be able to direct the disclosure of his or her own private information.

{¶ 14} Hageman admits that he made his health an issue in the divorce action by seeking custody of his and his ex-wife's minor child. Pursuant to the law of the Eighth Appellate District, Hageman was required to demonstrate that he was capable of caring for his child in order to be granted custody. See *Gill*, 2003-Ohio-180, 2003 WL 132447, ¶ 18–19. For that reason, he waived his medical privilege for the purposes of that case. See id. Whatever discomfort arose from this disclosure of private and confidential information was tempered by the possibility of success on his custody claim. However, there is neither a legal justification for nor a practical benefit to the proposition that a waiver for a specific, limited purpose is a waiver for another purpose.

{¶ 15} Creating an expansive waiver would be inconsistent with the generally recognized confidentiality provisions in Ohio and federal law. Moreover, the expansive waiver urged by Belovich would not be desirable public policy for a number of reasons. First, individuals should be encouraged to seek treatment for medical or psychological conditions, and privacy is often essential to effective treatment. This fact is especially true for psychological conditions. "Effective psychotherapy * * * depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Jaffee v. Redmond* (1996), 518 U.S. 1, 10, 116 S.Ct. 1923, 135 L.Ed.2d 337, citing studies and authorities presented by the American Psychiatric Association and the American Psychological Association.

{¶ 16} Likewise, if an expansive waiver existed for medical records obtained through litigation, the potential for abuse of this waiver would be high. The party receiving the records will generally be the only person with anything to gain from the disclosure of the information beyond the underlying litigation. The

facts in this case convince us that an attorney with medical records of a party in one case could use those records for purposes not intended by the party granting the waiver. Belovich represented Hageman's ex-wife in the divorce and civil-protection-order cases and obtained Hageman's psychological records as part of the divorce action. By sharing that information with the prosecutor in the criminal case against Hageman when it had not yet been made available in that case, she intensified the legal pressure against Hageman. It is not difficult to imagine that someone facing such actions might be encouraged to settle more quickly than he or she would had the medical records not been shared.

{¶ 17} With these considerations in mind, we hold that when the cloak of confidentiality that applies to medical records is waived for the purposes of litigation, the waiver is limited to that case. An attorney can certainly use medical records obtained lawfully through the discovery process for the purposes of the case at hand—e.g., submitting them to expert witnesses for analysis or introducing them at trial. However, an attorney may be liable to an opposing party for the unauthorized disclosure of that party's medical information that was obtained through litigation. Thus, as in our decision in *Biddle,* we conclude that an independent tort exists to provide an injured individual with a remedy for such an action.

{¶ 18} One final note is necessary. Belovich suggested at oral argument that if we were to recognize such a cause of action, it could be waived if the disclosing party failed to take steps to keep the medical records private, such as by requesting a protective order.

{¶ 19} We note her concern, but decline to address what effect the failure to take such actions may have on the tort recognized herein, given these facts. While it is undisputed that Hageman did not request a protective order or another form of protection for his medical records, it is also true that he did not explicitly authorize Dr. Thysseril to disclose the records to Belovich, the trial court did not hold a hearing on the disclosure (rather, Belovich executed a subpoena on her own without a signed release), the records were distributed to the prosecutor only a few days after they were released to Belovich, and the records were never entered into evidence in the divorce proceeding or the criminal matter. Thus, Hageman had no opportunity to object to the production of these records or to seek a protective order, given Belovich's conduct. Further, because the records were not introduced into evidence, they did not become public before Belovich disclosed them. It may be appropriate to discuss the failure to take protective measures if the issue actually arises.

## IV

{¶ 20} By giving the psychological records she obtained in the divorce case to the prosecutor in the criminal case against Hageman, Belovich violated Hage-

man's rights to keep that information confidential. Allowing attorneys with such information obtained through discovery to treat the information as public would violate the policy of maintaining the confidentiality of individual medical records. We therefore recognize that waiver of medical confidentiality for litigation purposes is limited to the specific case for which the records are sought and that an attorney who violates this limited waiver by disclosing the records to a third party unconnected to the litigation may be held liable for these actions.

{¶ 21} Therefore, the judgment of the court of appeals is hereby affirmed, and the case is remanded for further proceedings consistent with this opinion.

Judgment affirmed
and cause remanded.

PFEIFER and LANZINGER, JJ., concur.

O'CONNOR and CUPP, JJ., concur in the syllabus and judgment.

LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

---

**CUPP, J., concurring in syllabus and judgment only.**

{¶ 22} I write separately because I view the waiver-of-privilege issue somewhat differently from the plurality or dissent in this case.

{¶ 23} Ohio's doctor-patient privilege statute, R.C. 2317.02(B)(1)(a)(iii), provides, "The testimonial privilege * * * does not apply, and a physician * * * may testify or may be compelled to testify * * * [i]n any civil action, in accordance with the discovery provisions of the Rules of Civil Procedure in connection with a civil action, * * * [i]f a medical claim * * * [or] any other type of civil action * * * is filed by the patient* * *." The court below determined, and the parties do not dispute, that Hageman's counterclaim in the divorce case seeking custody of the couple's daughter waived the doctor-patient privilege in R.C. 2317.02(B) for purposes of the divorce case. See, e.g., *Gill v. Gill*, 8th Dist. No. 81463, 2003-Ohio-180, 2003 WL 132447; cf. R.C. 3109.04(F)(1)(e) (the "mental and physical health of all persons involved in the situation" must be considered in determining the best interest of the child for custody purposes). The parties here dispute the extent of that waiver and whether it destroyed the privilege for all time, including with regard to cases separate from the divorce and civil-protection-order case.

{¶ 24} In this case, Belovich provided the doctor's notes to an assistant prosecutor in connection with a criminal case against Hageman. Although Hageman did not seek a protective order in the divorce case to limit the use or disclosure of his doctor's notes, the doctor's records were not introduced into evidence in the divorce case. (Thus, the confidentiality of Hageman's medical

information was not destroyed by making that information public at or in connection with a trial, for example.)

{¶ 25} On its face, the specific statutory waiver or exception at issue here applies "in any civil action." See R.C. 2317.02(B)(1)(a). Accordingly, to resolve this case, it suffices to conclude that while Hageman's asserting a child-custody counterclaim waived the privilege pursuant to R.C. 2317.02(B)(1)(a)(iii) for the divorce and civil-protection-order action, that statutory waiver did not apply to the separate criminal case involving Hageman. I would leave for another day the broader issue of whether the privilege is waived for all time and in all cases after the statutory waiver in R.C. 2317.02(B)(1)(a)(iii) has been found to apply in a particular case, as that issue was not fully briefed here.

{¶ 26} The plurality opinion does not discuss the elements of the tort it recognizes today, an extension of the tort created in *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d 395, 715 N.E.2d 518. Accordingly, the task of delineating the elements of this tort remains, either upon remand here or in another case.

{¶ 27} For the above reasons, I concur in the judgment affirming the court of appeals' decision reversing the trial court's order granting summary judgment for Belovich.

O'CONNOR, J., concurs in the foregoing opinion.

---

**O'DONNELL, J., dissenting.**

{¶ 28} I respectfully dissent.

{¶ 29} In today's opinion, the plurality takes a step away from the independent tort that the court recognized in *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d 395, 715 N.E.2d 518, and recognizes a new tort creating liability on the part of opposing counsel for use of medical records received pursuant to a properly issued subpoena when a patient waived the physician-patient privilege. This holding constitutes a usurpation of the role of the legislative branch of government and amounts to judicially legislating from the bench.

{¶ 30} Notably, in *Biddle,* the court narrowly held that a third party could be liable for inducing the unauthorized unprivileged disclosure of nonpublic medical information that a physician or hospital learned within a physician-patient relationship. There, to determine whether a third party can be held liable for inducing the disclosure of private medical records, we established a three-part test. To be liable, the third party must have (1) knowledge of the existence of a physician-patient relationship, (2) an intent to induce disclosure of information about the patient, and (3) no reasonable belief that the physician could disclose the information without violating the physician's duty of confidentiality. Id. at 408, 715 N.E.2d 518.

{¶ 31} In *Biddle,* we stated, "[T]he hospital's general consent form did not provide the authority to release medical information to the law firm and, therefore, the disclosures were unauthorized." Id. at 407, 715 N.E.2d 518.

{¶ 32} Here, however, *Biddle* is inapplicable for at least two reasons: one, Hageman waived privilege by placing his medical condition at issue in the litigation, and two, the attorney, Belovich, reasonably believed that Dr. Thysseril could disclose Hageman's medical information without violating the physician-patient privilege because it had been waived. Accordingly, in my view, the holding in this case is a dramatic departure from the narrow holding in *Biddle,* and I am unable to join this majority.

{¶ 33} Here, Hageman waived the statutory physician-patient privilege by filing a counterclaim seeking custody of his minor child in the pending divorce action. *Gill v. Gill,* 8th Dist. No. 81463, 2003-Ohio-180, ¶ 19. Hageman's waiver permitted opposing counsel to subpoena the medical records held by Hageman's physician, who could have been compelled to testify about or submit discovery related to Hageman's physical or mental conditions relevant to that proceeding. R.C. 2317.02(B)(3)(a).

{¶ 34} Furthermore, while the divorce was pending, Hageman allegedly assaulted his wife at their home, and his wife had obtained a civil domestic-violence protection order in that pending divorce. Therefore, Hageman's claims that waiver applied only to the divorce proceeding and not the civil domestic-violence protection order are without merit because they arise from the same case.[3]

{¶ 35} Because Hageman placed his mental condition at issue and because his behavior was such that the divorce court had issued a civil domestic-violence protection order, Belovich, in her duty to represent her client, subpoenaed Hageman's medical records from his treating physician.

{¶ 36} The record reveals that Hageman's physician, Dr. Thysseril, released the records to Belovich in response to the subpoena without contesting the matter. Moreover, the appellate court here affirmed the trial court's grant of summary judgment to the physician who released those records because Hageman had, in effect, waived his physician-patient privilege. *Hageman v. Southwest Gen. Health Ctr.,* Cuyahoga App. No. 87826, 2006-Ohio-6765, 2006 WL 3743095, ¶ 29.

{¶ 37} In my view, the issue in this case concerns the scope of Hageman's waiver of the physician-patient privilege. The plurality, without citing any law to support its position, states "[T]here is neither a legal justification for nor a

---

3. The disclosure at issue here was made to the prosecutor in the separate but related criminal case against Hageman for the alleged assault on his wife.

practical benefit to the proposition that a waiver for a specific, limited purpose is a waiver for another purpose." I respectfully disagree.

{¶ 38} Hageman engaged in confidential communications with his physician regarding his medical condition, but voluntarily waived that confidentiality by filing a lawsuit that placed his medical condition at issue. Hageman first learned that opposing counsel had his medical records on October 17, 2003, when he appeared at the domestic relations court for a scheduled hearing on the civil domestic-violence protection order. Although he was aware that Belovich had the records, he did not seek a protective order from the court to limit the use of the medical records, nor did he seek any agreement with opposing counsel to maintain this confidentiality. As counsel for his wife, Belovich had no duty to preserve the confidentiality of his medical information.

{¶ 39} I agree with the plurality's conclusion that the physician-patient privilege and the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA") demonstrate a public policy favoring the confidentiality of personal medical records. But in my view, that confidentiality applies only in the context of medical records maintained by a healthcare provider or other entity specifically described in those statutes. Thus, I cannot agree that HIPAA or the privilege supports a broad public policy favoring the confidentiality of medical information held by someone who has no statutory or common law duty to the patient and is, in fact, an adversary of the patient.

{¶ 40} The underlying purpose of the physician-patient privilege and its resulting confidentiality is to encourage patients to freely disclose all necessary information to their physicians, no matter how private or potentially embarrassing, in order to facilitate the proper treatment of the patient's medical condition. *Ohio State Med. Bd. v. Miller* (1989), 44 Ohio St.3d 136, 139, 541 N.E.2d 602. The privilege did not exist at common law and therefore must be strictly construed against the party seeking to assert it. Id. at 140, 541 N.E.2d 602. Moreover, the purpose of the privilege is not furthered by permitting a party to invoke it after he has placed his health at issue in a legal proceeding.

{¶ 41} Several jurisdictions recognize that the waiver of the physician-patient privilege at trial should bar a claim of privilege at a subsequent trial. See, e.g., *Menda v. Springfield Radiologists, Inc.* (2000), 136 Ohio App.3d 656, 659, 737 N.E.2d 590; *People v. Bloom* (1908), 193 N.Y. 1, 7, 85 N.E. 824; *State v. Mincey* (1984), 141 Ariz. 425, 439, 687 P.2d 1180. See also Wigmore, Evidence (McNaughton Ed. 1961) Section 2389(d)(4) ("A waiver at a former trial should bar a claim of the privilege at a later trial, for the original disclosure takes away once and for all the confidentiality sought to be protected by the privilege. To enforce it thereafter is to seek to preserve a privacy which exists in legal fiction only." [Emphasis omitted.]) These cases generally stand for the proposition that once

confidential information is made public, it cannot be hidden or concealed again—the proverbial bell cannot be unrung. Although these cases address situations in which the confidential information was disclosed in a public courtroom, they recognize that a waiver of the privilege is general, rather than limited, because once the information is disclosed, there is nothing left to protect. *People* at 10, 85 N.E. 824 ("The statute as a matter of public policy gave the defendant a personal privilege, but he intentionally surrendered it, and the surrender was unconditional by operation of law").

{¶ 42} In contrast, the Michigan Supreme Court has recognized that a party's failure to assert a privilege during the course of discovery has waived the privilege for purposes of the litigation at hand, but has not waived it for the purposes of any other action. See *Landelius v. Sackellares* (1996), 453 Mich. 470, 475, 556 N.W.2d 472. Notably, however, this holding relies upon an express provision in Michigan Civ.R. 2.314(B)(1), which reads: "A party who has a valid privilege may assert the privilege and prevent discovery of medical information relating to his or her mental or physical condition. The privilege must be asserted in the party's written response to a request for production of documents under MCR 2.310, in answers to interrogatories under MCR 2.309(B), before or during the taking of a deposition, or by moving for a protective order under MCR 2.302(C). A privilege not timely asserted is waived in that action, but is not waived for the purposes of any other action."

{¶ 43} Ohio has no such corresponding rule. Rather, the General Assembly has expressed its intention to limit the scope of a party's waiver of the physician-patient privilege in only one context—when the patient is deceased and there is a dispute regarding the patient's competency at the time he executed a document. In that context alone, R.C. 2317.02(B)(1)(e)(v) provides: "A person to whom protected health information is disclosed under division (B)(1)(e)(i) [providing for disclosure when the patient is deceased and his earlier competency to execute a document is disputed] of this section shall not use or disclose the protected health information for any purpose other than the litigation or proceeding for which the information was requested and shall return the protected health information to the covered entity or destroy the protected health information, including all copies made, at the conclusion of the litigation or proceeding."

{¶ 44} Applying the maxim "expressio unius est exclusio alterius," I would assert that the legislature's express limitation of the waiver to the litigation or proceeding for which the information was requested in one circumstance implies that in all other circumstances, the waiver of the physician-patient privilege should be broadly interpreted.

{¶ 45} The majority, however, limits the scope of the waiver, creates a new duty upon attorneys to protect the confidentiality of an adversary's medical

records properly obtained in the course of litigation, and imposes liability for their unauthorized disclosure—even if disclosure of that evidence is relevant and favorable to their client in a separate but related proceeding. The majority announces this new tort without setting forth its elements or specifying the appropriate measure of damages for violation.

{¶ 46} While there may be compelling public policy reasons for imposing a duty to maintain the confidentiality of a patient's medical records when they are produced to opposing counsel in the course of litigation, "the legislative branch is 'the ultimate arbiter of public policy.' " *Arbino v. Johnson & Johnson,* 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 21, quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network v. Dupuis,* 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21. Thus, the legislature is the proper branch of government to consider and announce such a cause of action if it deems it advisable. The majority today invades the province of the legislature by judicially creating this new cause of action.

{¶ 47} Hageman waived his physician-patient privilege by filing a counterclaim in the divorce action, thereby placing his medical condition at issue, and failed to contest the disclosure of his medical records by his physician. Under these circumstances, the attorney who lawfully came into possession of the records, which were no longer privileged, owed no duty to Hageman. Rather, in the proper representation of her client, who allegedly had been the victim of an assault, she provided the information to the prosecuting attorney. Today's decision takes a step away from *Biddle,* in which the hospital released patient medical records to its own counsel. Here, opposing counsel obtained the medical records through the use of a properly issued subpoena by operation of law. Nothing in our prior case, however, would suggest that opposing counsel owed any duty whatsoever to the opposing party to maintain the confidentiality of the medical information. The very purpose of permitting its discovery is to allow its examination and use by opposing counsel in furtherance of the cause of a client. Accordingly, I would reverse the judgment of the court of appeals.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

---

James E. Boulas Co., L.P.A., and James E. Boulas, for appellee Kenneth Hageman.

Law Office of Jacob Kronenberg and Jacob A.H. Kronenberg, for appellant.