[Cite as *Kodger v. Ducatman*, 2012-Ohio-2517.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   97842

---

## SUZAN E. KODGER, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## ROBERT DUCATMAN, ET AL.

DEFENDANTS-APPELLEES

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-750685

BEFORE:     Boyle, P.J., S. Gallagher, J., and Kilbane, J.

RELEASED AND JOURNALIZED:     June 7, 2012

**ATTORNEY FOR APPELLANTS**

Donald O. Kodger
Great Lakes Law LLC
1562 Devonshire Drive
Brunswick, Ohio    44212

**ATTORNEY FOR APPELLEES**

David A. Kutik
Jones Day
North Point
901 Lakeside Avenue
Cleveland, Ohio    44114-1190

MARY J. BOYLE, P.J.:

{¶1} Plaintiffs-appellants, Suzan, Donald, and Christopher Kodger, appeal from a trial court's order granting summary judgment to defendants-appellees, Robert Ducatman, John Newman, Jones Day Limited Partnership ("Jones Day"), the Catholic Diocese of Cleveland, Patrick Shea, and Edward Palumbos. The Kodgers raise six assignments of error for our review:

"[1.] The trial court erred when it determined that Dr. McPherson's report was not a medical record.

"[2.] The trial court erred when it determined that by filing the McPherson reports the plaintiffs removed the obligation of the defendants to protect the plaintiffs' medical information.

"[3.] The trial court erred when it granted, without comment, summary judgment to the defendants on the plaintiffs' cause of action of intentional or reckless infliction of severe emotional distress.

"[4.] The trial court erred when it granted summary judgment to the defendants on the plaintiffs' cause of action of intentional or reckless infliction of emotional distress since none of the court's stated holdings addressed any of the elements of plaintiffs' claims.

"[5.] The trial court erred when it granted, without comment, summary judgment to the defendants on the plaintiffs' cause of action of negligent infliction of severe emotional distress.

"[6.] The trial court erred when it granted summary judgment to the defendants on the plaintiffs' cause of action of negligent infliction of emotional distress since none of the court's stated holdings addressed any of the elements of plaintiffs' claims."

{¶2} Finding no merit to the appeal, we affirm the judgment of the trial court.

Procedural History and Factual Background

{¶3} The facts in this case are not in dispute. In 2003, plaintiffs brought suit against the Catholic Diocese of Cleveland, Bishop Anthony Pilla, and Father Edward Weist. *See Kodger v. Catholic Diocese of Cleveland,* Cuyahoga C.P. No. CV-497769 ("2003 case"). As part of that case, plaintiffs submitted psychological reports to the court and served them upon Ducatman, a Jones Day partner representing the defendants in the 2003 case. Ducatman distributed the reports to Newman, a partner at Jones Day "who is the relationship partner for the diocese," and Shea, who is "general counsel for the diocese." Shea distributed the reports to "Fr. Condon of the Diocese of Rochester, N.Y." The 2003 case was settled on April 24, 2006.

{¶4} According to plaintiffs' complaint in the present case, in June 2010, they discovered that the psychological reports they had submitted to Ducatman in the 2003 case had been forwarded to other partners at Jones Day and the diocese. When plaintiffs discovered this, they brought suit against defendants for unauthorized

disclosure of medical records, and intentional and negligent infliction of severe emotional distress.

**{¶5}** Defendants moved for summary judgment, which the trial court granted. It is from this judgment that plaintiffs appeal. We will combine plaintiffs' assignments of error where necessary for ease of discussion.

## Summary Judgment

**{¶6}** We review an appeal from summary judgment under a de novo standard. *Baiko v. Mays*, 140 Ohio App.3d 1, 10, 746 N.E.2d 618 (8th Dist.2000). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997). Civ.R. 56(C) provides that before summary judgment may be granted, a court must determine that

> (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 191, 672 N.E.2d 654 (1996).

### *Hageman v. Southwest General Health Center*: Unauthorized Disclosure of Medical Records

**{¶7}** In their first two assignments of error, the Kodgers argue that the trial court erred when it granted defendants' summary judgment on their claim for unauthorized disclosure of medical records. They contend that the trial court erred when it determined that because they filed the psychological reports with the court in the 2003 case, their claim failed. They further contend that the trial court erred when it

determined that the psychological reports they submitted in the 2003 case were not medical records.

{¶8} The Kodgers rely on *Hageman v. S.W. Gen. Health Ctr.,* 119 Ohio St.3d 185, 2008-Ohio-3343, 893 N.E.2d 153, a plurality opinion of the Ohio Supreme Court, in support of their arguments. In *Hageman*, the plurality recognized a new cause of action against an attorney for the unauthorized disclosure of an opposing party's "medical information that was obtained through litigation." *Id.* at the syllabus. Because *Hageman* recognized a new cause of action, we will extensively review its facts, analysis, and holding.

A.    *Hageman* Facts

{¶9} In January 2003, Kenneth Hageman began meeting with a psychiatrist for treatment. In his first treatment session, he admitted to having homicidal thoughts about his wife. The psychiatrist treated him through July 2003.

{¶10} In February 2003, Hageman's wife filed for divorce. Barbara Belovich served as her divorce attorney. Hageman filed a counterclaim, seeking legal custody of the parties' minor child.

{¶11} While both the divorce case and Hageman's psychiatric treatment were ongoing, Hageman allegedly assaulted his wife at their home, and criminal charges were brought against him. Shortly thereafter, his wife sought and received a civil protection order ("CPO"). The temporary order gave her custody of their child and suspended Hageman's contact and visitation rights until a full hearing could be held.

**{¶12}** In preparation for the full CPO hearing, Belovich issued subpoenas to Hageman's psychiatrist, seeking the production of Hageman's medical records. Belovich believed that Hageman had waived his privilege to those records by filing the counterclaim for custody in the divorce action. Although Hageman did not sign a release for this information, the psychiatrist faxed Hageman's records to Belovich.

**{¶13}** On the date of the full CPO hearing, Belovich met with the prosecutor in the criminal case against Hageman. The prosecutor was attending the hearing as an observer and was not scheduled to testify or otherwise participate in the hearing. Nonetheless, Belovich gave the prosecutor a copy of Hageman's medical records that she had received from the psychiatrist.

**{¶14}** Hageman sued Belovich, among others, for improperly disclosing his medical records without his authorization.

B. *Hageman* Analysis

**{¶15}** The Ohio Supreme Court explained that "[i]n general, a person's medical records are confidential." *Id.* at ¶ 9. It went on to state:

> Numerous state and federal laws recognize and protect an individual's interest in ensuring that his or her medical information remains so. For example, the Ohio Public Records Act prohibits medical records maintained by public institutions from being released pursuant to a public-records request: "Public record" means records kept by any public office * * * [but] does not mean any of the following: (a) Medical

records.[1]     R.C. 149.43(A)(1)(a).     Likewise, the federal Health Information Portability and Accountability Act of 1996 ("HIPAA") prevents health-care providers from disclosing health information except in certain specific circumstances.     See generally 45 C.F.R. 164.502. Physician-patient and psychologist-patient privileges have been codified in Ohio to deny the use of such information in litigation except in certain limited circumstances.     See R.C. 2317.02(B)(1) and 4732.19.     Physical and mental-health examinations of a litigating party may be ordered only when relevant and "for good cause shown."   *See* Civ.R. 35(A).   *Id.* at ¶ 9.

**{¶16}** The Supreme Court explained how it "explicitly recognized and applied this basic policy of confidentiality in *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395, 715 N.E.2d 518 (1999)."   *Id.* at ¶ 10.   In *Biddle*, the Supreme Court "confronted issues arising from the disclosure of health-care information obtained through a physician-patient relationship."   *Hageman* at ¶ 10.   After surveying cases in Ohio and beyond in *Biddle*, the Supreme Court "recognized a separate tort for breach of confidentiality related to medical information."   *Hageman* at ¶ 11, citing *Biddle* at 400-401.

---

[1]For the purposes of the Public Records Act, a "medical record" is defined as "any document or combination of documents, except births, deaths, and the fact of admission to or discharge from a hospital, that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is generated and maintained in the process of medical treatment."   R.C. 149.43(A)(3).

**{¶17}** In this new cause of action set forth in *Biddle*, the Supreme Court held that one could sue "physicians and hospitals that disclose confidential medical information to a third party without authorization or privilege to do so, and * * * third parties who induce physicians or hospitals to disclose such information." *Hageman* at ¶ 11, citing *Biddle* at paragraphs one and three of the syllabus. Hageman relied on *Biddle* as one of his underlying justifications for suing Belovich. Belovich argued that *Biddle* did not apply to attorneys who lawfully obtained the healthcare information in the course of litigation. *Hageman* at ¶ 12.

**{¶18}** The Supreme Court reasoned that the rationale for *Biddle* applied to the facts in *Hageman*. It explained:

> *Biddle* stressed the importance of upholding an individual's right to medical confidentiality beyond just the facts of that case. "[I]t is for the patient — not some medical practitioner, lawyer, or court — to determine what the patient's interests are with regard to personal confidential medical information." As the Supreme Court of California has observed in discussing the related concept of a right to privacy, such a right "is not so much one of total secrecy as it is of the right to *define* one's circle of intimacy — to choose who shall see beneath the quotidian mask." (Emphasis sic.) If the right to confidentiality is to mean anything, an individual must be able to direct the disclosure of his or her own private information. (Internal citations omitted.) *Hageman* at ¶ 13.

C.      _Hageman_ Holding

**{¶19}** The Supreme Court held that "when the cloak of confidentiality that applies to medical records is waived for the purposes of litigation, the waiver is limited to that case." _Id._ at ¶ 17. It went on to explain that an attorney can use "the medical records obtained lawfully through the discovery process for the purposes of the case at hand — e.g., submitting them to expert witnesses for analysis or introducing them at trial." _Id._ But an attorney "may be liable to an opposing party for the unauthorized disclosure of that party's medical information that was obtained through litigation." _Id._ Thus, as its decision in _Biddle_ created a new cause of action, it also created a new, independent tort in _Hageman_ against an attorney "to provide an injured individual with a remedy for such an action." _Id._ The Supreme Court concluded:

By giving the psychological records she obtained in the divorce case to the prosecutor in the criminal case against Hageman, Belovich violated Hageman's rights to keep that information confidential. Allowing attorneys with such information obtained through discovery to treat the information as public would violate the policy of maintaining the confidentiality of individual medical records. We therefore recognize that waiver of medical confidentiality for litigation purposes is limited to the specific case for which the records are sought and that an attorney who violates this limited waiver by disclosing the records to a third party

unconnected to the litigation may be held liable for these actions. *Id.* at ¶ 20.

<u>Applying *Hageman*</u>

**{¶20}** After reviewing the facts of the case here, we conclude that the trial court did not err when it granted summary judgment to defendants on plaintiffs' *Hageman* claim. We agree with defendants that a *Hageman* claim cannot survive in this case. The plaintiffs, after refusing to enter into a protective order in the 2003 case regarding the sensitive allegations against the Cleveland Diocese, filed their psychological reports with the court in that case. Accordingly, the psychological reports became available for anyone to view. Without determining if the psychological reports here are indeed medical records (because as defendants argue, the plaintiffs referred to the reports as "expert witness reports" in the 2003 case when they filed them with the court), we conclude that the plaintiffs waived any right to assert privilege or bring an action against defendants for disclosing them.

**{¶21}** Plaintiffs raise several arguments against finding a waiver. First, they claim that in *Hageman*, the Ohio Supreme Court specifically stated that "waivers are not expansive but are limited." But we find that the facts in *Hageman* are distinguishable. In *Hageman*, the wife's attorney subpoened Hageman's pyschological records. Hageman's treating psychologist gave them to the attorney without Hageman's knowledge or consent. The wife's attorney then gave them to the prosecutor in Hageman's criminal case. Because the parties settled, the psychological records were

never used or entered into evidence or otherwise made public. The Supreme Court concluded that although Hageman had waived his right to assert privilege over the psychological reports in the divorce case (because he sought legal custody of his child), he did not waive them for other purposes.

{¶22} But here, the Kodgers, after refusing to enter into a protective order, filed their "expert witness reports" with the court in the 2003 case. Thus, the reports were made public to anyone who wanted to see them. Indeed, the psychological reports are still public for anyone to see in the 2003 case. As defendants state in their appellate brief, "[p]ut another way, would appellees be liable if, rather than sending the reports to another diocese, they simply told the officials in that diocese to go look in the Common Pleas Court public record? Of course not." We agree.

{¶23} Plaintiffs also argue that their *Hageman* claim can survive against defendants despite the fact that they did not agree to a protective order in the 2003 case. They assert that the tort against attorneys for unauthorized disclosure survives — "even if the information may be available to the public." In support of this argument, they cite to paragraphs 18 and 19 of *Hageman*. But after reviewing these paragraphs, it is our view that they strongly support defendants' position — not plaintiffs'.

{¶24} First, in paragraph 18, the Supreme Court explained that the defendant-attorney in that case "suggested at oral argument that if we were to recognize such a cause of action, it could be waived if the disclosing party failed to take steps to keep the medical records private, such as by requesting a protective order." *Id.* at ¶ 18.

But the Supreme Court *declined* to consider that argument — "given the facts" before it. *Id.* at ¶ 19. The Supreme Court explained that while it was undisputed that Hageman had never requested a protective order, it was as equally clear that he did not have a chance to object to the production of the records or request a protective order "given [his ex-wife's attorney's] conduct." *Id.* The Supreme Court concluded by stating, "[i]t may be appropriate to discuss the failure to take protective measures if the issue actually arises."

{¶25} In this case, unlike in *Hageman*, not only did the plaintiffs have the opportunity to enter into a protective order in the 2003 case, they actually refused to do so. Then, they filed the psychological reports with the court, making them public for all to see. Thus, plaintiffs' assertion that *Hageman* supports their claim against the Jones Day attorneys — despite the fact that the records were public — is unpersuasive.

{¶26} Finally, the plaintiffs argue that their psychological reports were not "public records" even though they were filed with the common pleas court because they are medical records exempt from the Public Records Act. And plaintiffs further contend that if they are not exempt from the Public Records Act as medical records, they are exempt as "trial preparation records." The Ohio Public Records Act, however, is wholly inapplicable to the facts of this case. "[T]he purpose of Ohio's Public Records Act, R.C. 149.43, is to expose government activity to public scrutiny, which is absolutely essential to the proper working of a democracy." *State ex rel. WHIO-TV-7 v. Lowe*, 77

Ohio St.3d 350, 355, 673 N.E.2d 1360 (1997), citing *White v. Clinton Cty. Bd. of Commrs.*, 76 Ohio St.3d 416, 420, 667 N.E.2d 1223 (1996).

**{¶27}** Accordingly, we overrule the Kodgers' first and second assignments of error.

### Intentional, Reckless, and Negligent Infliction of Severe Emotional Distress

**{¶28}** In their remaining assignments of error, the Kodgers argue that the trial court erred when it granted summary judgment to defendants on their claims of intentional, reckless, and negligent infliction of severe emotional distress. We disagree. The Kodgers' claims of intentional, reckless, and negligent infliction of severe emotional distress are grounded in the defendants' alleged unauthorized disclosure of medical records. Because there was no unauthorized disclosure of medical records, the Kodgers' claims fail as a matter of law.

**{¶29}** Therefore, the Kodgers' third, fourth, fifth, and sixth assignments of error are overruled.

Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
MARY EILEEN KILBANE, J., CONCUR