[Cite as *Scott v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-6326.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

AARON SCOTT
    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
    Defendant


    AND


LARRY SOLOMON
    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
    Defendant


    AND


ANTHONY MOODY
    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
    Defendant

    AND

JAMEEL HAAMID
    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
    Defendant


    AND


JOHN W. FORESTER
    Plaintiff

        v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
    Defendant


    AND


THOMAS STALLINGS
    Plaintiff

        v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
    Defendant


    AND


LAVANCE TURNAGE
    Plaintiff

        v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
    Defendant


    AND


FRANK E. TYSON
    Plaintiff

        v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

Defendant

AND

JOSEPH N. WILLIAMS
        Plaintiff

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
        Defendant

AND

MICHAEL EVANS
        Plaintiff

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
        Defendant

Case Nos. 2011-11157, 2011-11165, 2011-11173, 2011-11432, 2011-12056, 2011-12137, 2011-13061, 2011-13249, 2012-01554, 2012-02089

Judge Alan C. Travis
Magistrate Matthew C. Rambo

DECISION

{¶ 1} On April 27, 2012, the parties filed cross-motions for summary judgment pursuant to Civ.R. 56(A) and (B). On May 22, 2012, plaintiffs filed a response to defendant's motion. On June 15, 2012, defendant filed a response to plaintiffs' motion. On June 22, 2012, plaintiffs filed a reply. The motions are now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

**{¶ 4}** Plaintiffs are ten inmates in the custody and control of defendant at the Mansfield Correctional Institution (ManCI) who allege that defendant is responsible for the release of private medical information. Plaintiffs are either being treated for the human immunodeficiency virus (HIV) or are "chronic care" patients and they allege that ManCI negligently released a list of all such inmates "to the general population" at ManCI. Plaintiffs assert that the list at issue was widely circulated at ManCI, that they suffer "taunts, harassment, threats, emotional distress, anxiety, and fear" as a result, and that other inmates now believe that all of the patients on the list, including the chronic care patients, are HIV positive.

**{¶ 5}** Plaintiffs argue that defendant committed an invasion of plaintiffs' privacy by disclosing private medical information to a third party without the authorization or privilege to do so. Plaintiffs further argue that defendant's security and disposal procedures with respect to confidential medical records are inadequate and that they do not comply with the "Stipulation for Injunctive Relief" agreement that defendant entered into in *Fussell v. Wilkinson*, S.D.Ohio No. 1:03-cv-704 (Nov. 5, 2005). Defendant argues that plaintiffs have asserted constitutional claims over which this court lacks jurisdiction and, in the alternative, that plaintiffs' claims fail because defendant's employees did not "disclose" the information.

**{¶ 6}** The deposition transcripts of Sharon Welch and inmates Phillip Kukla and Kenneth Kirks were filed by plaintiffs. Kirks testified that while picking up trash in the loading dock area as part of his kitchen duties, he found a list of names and numbers of other inmates who were identified as having received treatment for HIV. (Kirks Deposition Exhibit 2.) According to Kirks, he was using a power washer to clean under a dumpster and the list "blew out" from underneath. Kirks stated that he then showed

the list to Kukla, whose cellmate was on the list, and who then made copies of the list that were disseminated throughout the ManCI inmate population.[1]

{¶ 7} Kukla offered a different version of the circumstances surrounding the discovery of the list. In his deposition, Kukla testified that Kirks lied about giving him the list and that he has never possessed a copy of the list. According to Kukla, he and Kirks were not cleaning the area when Kirks found the list, but were loading food into a freezer truck because the freezers in the kitchen were shut off. Kukla stated that Kirks showed him the list after they were finished working, told him he found it on the loading dock and described it as a "gold mine" that he could use to extort the inmates on the list. Kukla testified that while he and Kirks were working, he witnessed Alice Cain, who was then the ManCI Healthcare Administrator, escort an inmate worker who threw a large bag of trash into the dumpster and that there was "always paper flying" in the loading dock area. He further testified that Kirks would go into the dumpster and look through the trash "all the time" for contraband that had been thrown away by corrections officers.

{¶ 8} Sharon Welch worked at ManCI as a pharmacy technician filling inmate prescriptions in June 2011. Welch testified at her deposition that she used a list with inmates' names on it to fill prescriptions for both HIV and chronic care patients. She stated that the list in question was one such list that she had used to fill prescriptions and then thrown into the trash can in the pharmacy. According to Welch, she then emptied the trash can into a trash bag, set the bag outside the back door of the pharmacy, then an inmate worker collected it and took it to the dumpster, at which point "any inmate" would have access to it. Welch testified that there was no specific policy or procedure in place at the time regarding the disposal of the list, but that one has since been implemented. Welch stated that Ms. Cain made her aware that the list had been circulated among the inmates, but that she is unaware of any other incidents regarding inmate medical records in her prior 16 years of employment at ManCI.[2]

---

[1]Additionally, plaintiff Tyson amended his complaint to include a claim whereby another ManCI inmate came into possession of the documents relating to Tyson's mental health treatment, made copies of those documents, and posted them to the ManCI library and recreation areas. He does not allege how the inmate came into possession of the documents.

[2]Plaintiffs also provided the affidavit of Haamid; however, it is clear that none of the averments contained therein, other than his identification and authentication of a copy of the list previously identified by Kirks, are based on his personal knowledge and will not be considered by the court.

{¶ 9} In support of its motion, defendant filed affidavits from Alice Cain, E. Hermann, and Welch. Cain states she was employed at ManCI as the Healthcare Administrator at the time of the incident and that:

{¶ 10} "3. On January 7, 2011, Marilyn Christopher, RN2, generated a chronic care list of inmates receiving medications normally prescribed to individuals with [HIV];

{¶ 11} "4. Not all the inmates named on the chronic care list were HIV positive. Some inmates are on the list only because they receive the same or similar medications;

{¶ 12} "5. The chronic care list is not part of the inmates' medical record;

{¶ 13} "6. It is very important for HIV patients to closely follow their drug regimens, and so the pharmacy reviews this list to ensure that these inmates are regularly receiving their medications;

{¶ 14} "7. Also, these medications represent some of the [most] costly medications administered by [defendant]. Maintaining a chronic care list of inmates receiving these medications allows [defendant] to control its stock, adjust inventory accordingly, and help control costs of treating these inmates;

{¶ 15} "8. It is the typical practice of [defendant's] pharmacy to dispose of its trash with other trash from the health care center;

{¶ 16} "9. Trash to be disposed is kept in a back hallway, and a [member of defendant's staff] must unlock the door that leads to an outside dumpster. That staff person would either dispose of the trash him/herself or supervise the inmate porters disposing of the trash. The door to the outside dumpster would then be relocked;

{¶ 17} "10. That dumpster would then be taken to a locked dumpster, where its contents would be disposed of again;

{¶ 18} "11. Inmates Kirks and Kukla were not inmates working in the health care center;

{¶ 19} "12. Inmates [Kirks and Kukla] would have had to go through the dumpster of trash bags, opened the trash bags, and then searched through the trash bags to find the chronic care list that they later disseminated."

{¶ 20} In her affidavit, Welch clarifies that at the time her deposition was taken she did not have personal knowledge of the trash collection procedures at ManCI beyond placing the trash bag outside of the pharmacy door and that her statement that "any inmate" had access to the trash was speculation.

{¶ 21} Corrections Officer E. Hermann averred that as part of his regular duties he supervises inmates taking trash carts to the trash compactor for disposal. In his affidavit, Hermann testified as to the regular trash disposal practice at ManCI, but did not aver that the practice was in place during June 2011. Therefore, his affidavit will not be considered by the court.

{¶ 22} While it is well-settled that the Court of Claims lacks subject matter jurisdiction over claims based upon alleged violations of a constitutionally guaranteed right to privacy, *see Thompson v. S. State Community College*, 10th Dist. No. 89AP-114 (June 15, 1989); *Burkey v. S. Ohio Corr. Facility*, 38 Ohio App.3d 170 (10th Dist.1988), "[i]n Ohio, an independent tort exists for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship." *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395, 1999-Ohio-115, paragraph one of the syllabus. The Supreme Court of Ohio recognized the tort in *Biddle* based upon the policy that "[i]n general, a person's medical records are confidential. Numerous state and federal laws recognize and protect an individual's interest in ensuring that his or her medical information remains so." *Hageman v. Southwest Gen. Health Ctr.*, 119 Ohio St.3d 185, 2008-Ohio-3343, ¶ 9. "Indeed, even a prison inmate's personal medical records are qualifiedly protected from disclosure and are not 'public' records *per se*." *Wilson v. Ohio Dept. of Rehab. & Corr.*, 73 Ohio App.3d 496, 499 (1991).

{¶ 23} This court has previously found liability where an employee of defendant voluntarily disclosed an inmate's private medical information to a third party without authorization or privilege. *See MacConnell v. Ohio Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2008-10528, 2012-Ohio-283.

{¶ 24} The list at issue identifies plaintiffs Scott, Solomon, Moody, Haamid, Stallings, and Williams as patients receiving HIV "protocol."[3] With regard to these plaintiffs, the court finds that the evidence presented establishes that nonpublic medical information about such plaintiffs was obtained from defendant by third parties. The question is whether the actions of defendant's employees with regard to that information constituted an "unauthorized, unprivileged disclosure" of that information. Indeed, the

---

[3]The names and identifying information of plaintiffs Forester, Turnage, Tyson, and Evans does not appear on the list at issue. Thus, no private information about such plaintiffs was disclosed and the court finds that their claims are without merit.

court finds that *MacConnell*, *Biddle*, and *Hageman* hinged on whether there was an affirmative act of disclosure of privileged information. In this case, Welch did not commit an affirmative act of disclosure, inasmuch as she merely placed the list in the trash can, as she had done on numerous prior occasions. Therefore, the court finds that defendant did not "disclose" private medical information to a third party without the authorization or privilege to do so as it relates to the claims of these plaintiffs.[4]

{¶ 25} To the extent that plaintiffs argue that defendant was negligent in the way it disposed of the list and in its handling of trash in general, the Supreme Court of Ohio has held that "[t]he language in R.C. 2743.02 that 'the state' shall 'have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties * * *' means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Reynolds v. State*, 14 Ohio St.3d 68, 70 (1984); *Von Hoene v. State*, 20 Ohio App.3d 363, 364 (1st Dist.1985). Prison administrators are provided "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

{¶ 26} The court finds that defendant's decisions with respect to the procedures for disposing of documents used by the pharmacy are characterized by the exercise of a high degree of official judgment and discretion and that defendant is entitled to discretionary immunity for claims arising therefrom.

{¶ 27} Addressing plaintiffs' arguments that defendant violated the "Stipulation for Injunctive Relief," entered into in *Fussell, supra,* the court finds that such agreement was wide-ranging and dealt with a plethora of issues relating to the conditions under which inmates in the state of Ohio are incarcerated. Included in the stipulation are provisions to "assure the confidentiality" of inmates' "health records." *Fussell*, ¶ 119. The stipulation remained in force until June 22, 2012, and included a mandatory dispute resolution process for any dispute arising thereunder as to whether defendant was in compliance with the stipulation. *Fussell*, ¶ 140-142; *see also Greene v. Mohr*, S.D.

---

[4]Plaintiff Tyson failed to allege any improper disclosure of his mental health records, and did not provide any evidence to establish that such a disclosure took place. Accordingly, his claim is without merit.

Ohio No. 1:12-cv-144 (April 11, 2012). Thus, this court is without jurisdiction to adjudicate any claims arising from the *Fussell* agreement.

{¶ 28} Based upon the foregoing, plaintiffs' motion for summary judgment shall be denied and defendant's motion for summary judgment shall be granted. Judgment shall be rendered in favor of defendant.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

AARON SCOTT
    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
    Defendant

    AND

LARRY SOLOMON
    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
    Defendant

    AND

ANTHONY MOODY
    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
    Defendant

    AND
JAMEEL HAAMID
    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
Defendant


AND


JOHN W. FORESTER
Plaintiff

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
Defendant


AND


THOMAS STALLINGS
Plaintiff

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
Defendant


AND


LAVANCE TURNAGE
Plaintiff

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
Defendant


AND


FRANK E. TYSON
Plaintiff

v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
Defendant

AND


JOSEPH N. WILLIAMS
    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
    Defendant


    AND

MICHAEL EVANS
    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION
    Defendant

Case Nos. 2011-11157, 2011-11165, 2011-11173, 2011-11432, 2011-12056, 2011-12137, 2011-13061, 2011-13249, 2012-01554, 2012-02089

Judge Alan C. Travis
Magistrate Matthew C. Rambo

<u>JUDGMENT ENTRY</u>

{¶ 29} A non-oral hearing was conducted in this case upon the parties' motions for summary judgment. For the reasons set forth in the decision filed concurrently herewith, plaintiffs' motion for summary judgment is DENIED and defendant's motion for summary judgment is GRANTED. Judgment is rendered in favor of defendants. All previously scheduled events are VACATED. Court costs are assessed against plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

                                _____
                                ALAN C. TRAVIS
                                Judge

cc:

Kristin S. Boggs
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Richard F. Swope
6480 East Main Street, Suite 102
Reynoldsburg, Ohio 43068

005
Filed August 1, 2012
To S.C. Reporter January 17, 2013